IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF PENNSYLVANIA

| | |
|---|---|
| STATE FARM FIRE & CASUALTY CO.<br>ONE STATE FARM PLAZA<br>BLOOMINGTON, IL  61710<br>         Plaintiff,<br><br>    v.<br><br>GOODMAN MANUFACTURING COMPANY, L.P.<br>5151 SAN FELIPE, SUITE 500<br>HOUSTON, TX  77056<br>and<br>BEARDSLEY MECHANICAL, INC.<br>239 McCONNELL ROAD<br>CANONSBURG, PA  15317<br>         Defendants. | Civil Action No.:  2:22-cv-01268 |

## AMENDED COMPLAINT

Plaintiff, State Farm Fire & Casualty Company ("Plaintiff"), by and through undersigned counsel, hereby demands judgment against Defendants, Goodman Manufacturing Company, L.P. ("Goodman") and Beardsley Mechanical, Inc. ("Beardsley") (collectively "Defendants"), complaining against them as follows:

### PARTIES

1. Plaintiff is an Illinois corporation with its principal place of business at the above-captioned address.

2. At all relevant times, Plaintiff was authorized to provide in Pennsylvania the insurance described herein.

3. At all relevant times, Plaintiff provided – via an in-force policy – homeowners insurance to Marcella and Tyson Swigart ("subrogors") in connection with their residential property at 545 Harrogate Road in Pittsburgh, Pennsylvania ("subject property").

4. As a result of related claims made on said policy in the wake of the incident

described below, Plaintiff became subrogated to certain recovery rights and interests of subrogors (i.e. for monies paid per the policy), including the claims asserted in this action.

5. Defendant Goodman is a Texas corporation with its principal place of business at the above-captioned address; upon information and belief, Goodman was at all relevant times engaged in the business of designing, manufacturing, assembling, testing, inspecting, marketing, distributing and/or selling (*inter alia*) furnaces and their component parts, and did in fact design, manufacture, assemble, test, inspect, market, distribute and/or sell (*inter alia*) the furnace and its component parts at the subject property that is at issue in this case ("the furnace").

6. Defendant Beardsley is a Pennsylvania corporation with its principal place of business at the above-captioned address; upon information and belief, Beardsley was at all relevant times engaged in the business of, *inter alia*, providing HVAC services and, more specifically, was the HVAC contractor that performed work on the HVAC system at the subject property; this included work on the furnace.

## JURISDICTION AND VENUE

7. Jurisdiction is based on 28 U.S.C. §1332(a)(1) as this action involves a controversy between citizens of different states. Moreover, the amount in controversy exceeds the jurisdictional threshold of this Court (exclusive of interest and costs).

8. Venue is proper in this district based on 28 U.S.C. §1391(a) in that the events giving rise to this claim occurred within this district.

## STATEMENT OF FACTS

9. In or about November 2017, subrogors had the furnace installed at the subject property; at all relevant times thereafter, it was used, handled, and maintained in a reasonable and foreseeable manner.

10. Upon information and belief, subrogors subsequently retained Beardsley to provide HVAC-related goods and services at the subject property, included as to the furnace.

11. On or about, November 28, 2021, a fire originating at the furnace occurred at the subject property; the fire caused subrogors to sustain extensive and severe property damage, as well as suffer additional expenses and hardships besides (including loss of use of the property).

### COUNT I – NEGLIGENCE v. GOODMAN

12. Plaintiff incorporates by reference the preceding averments as though they were repeated here.

13. Goodman owed a duty of reasonable care to subrogors in regard to the design, manufacture, assembly, testing, inspection, marketing, and/or distribution, *inter alia*, of the furnace; Goodman breached said duty.

14. The herein-described damages were the direct and proximate result of the negligent acts and/or omissions of Goodman by and through its employees, agents, technicians, vendors, suppliers, subcontractors, and/or servants acting in the course and scope of their assigned duties; more specifically, they failed to exercise reasonable care by …

   a. failing to design, manufacture, inspect, assemble, distribute, test, and/or market a properly functioning and defect-free furnace, which after reasonable and foreseeable use malfunctioned and/or catastrophically failed;

   b. failing to properly design, manufacture, inspect, assemble, distribute, test, and/or market the furnace and its components free of defects;

   c. failing to reasonably determine that the furnace was not in a safe condition and free of all material defects, which after reasonable and foreseeable use catastrophically failed and/or malfunctioned;

   d. designing, manufacturing, inspecting, assembling, distributing, testing, and/or marketing the furnace when it knew or should have known that the furnace was unsafe and unfit for its intended use;

   e. designing, manufacturing, inspecting, assembling, distributing, testing, and/or marketing the furnace when it knew or should have known that the furnace would be inadequate for the reasons for which it was purchased;

f. designing, manufacturing, inspecting, assembling, distributing, testing, and/or marketing the furnace despite it having unreasonably dangerous components that caused it to catastrophically fail and/or malfunction;

g. designing, manufacturing, inspecting, assembling, distributing, testing, and/or marketing a dangerously defective furnace that Goodman knew or reasonably should have known exposed subrogors to an unreasonable risk of harm;

h. failing to properly and adequately design, manufacture, inspect, assemble, market, sell, distribute, and/or test the furnace and its components prior to introducing it into the stream of commerce;

i. failing to provide adequate and sufficient warnings and instructions with respect to the furnace, which rendered it defective and unreasonably dangerous;

j. failing to take reasonable efforts to inform and warn subrogors of the defective and dangerous conditions of the furnace once Goodman knew of such conditions and the dangers they posed;

k. designing, manufacturing, inspecting, assembling, distributing, testing, and/or marketing the furnace in a defective condition because its components failed and thereby rendered it hazardous and dangerous for its contemplated and intended use; and/or

l. designing, manufacturing, and/or distributing a dangerously defective furnace – including its component parts – that Goodman knew or reasonably should have known exposed subrogors to an unreasonable risk of harm because the components could overheat system components and thereby cause a fire.

15. As a direct and proximate result of Goodman's herein-described negligent acts and/or omissions, subrogors sustained and incurred damages to their property, as well as other consequential and incidental harms (including clean-up costs, repair, and other associated expenses) in an amount in excess of $83,000.00.

16. As described above, Plaintiff became subrogated to certain recovery rights and interests of subrogors, i.e. for claims paid per the policy, including the claims asserted in this action.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Goodman – jointly, severally, and/or in the alternative with the other Defendant in this action

– in an amount in excess of $83,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

## COUNT II – STRICT LIABILITY v. GOODMAN

17. Plaintiff incorporates by reference the preceding averments as though they were repeated here.

18. At all relevant times, Goodman was engaged in the business of designing, testing, inspecting, assembling, manufacturing, distributing, and/or otherwise placing into the stream of commerce, furnaces, and their component parts, and specifically designed, tested, inspected, assembled, manufactured, distributed and/or placed into the stream of commerce the furnace at the subject property.

19. The furnace was not modified, changed, altered, or abused by subrogors or anyone else prior to or during its use.

20. Goodman knew and intended that the furnace would be used by members of the public, and knew of the specific uses, purposes, and requirements to which said furnace would be put.

21. Goodman designed, tested, inspected, manufactured, sold, distributed, and/or placed into the stream of commerce, the furnace – including its component parts – in a dangerously defective condition, which catastrophically failed due to a defect and/or foreseeable malfunction.

22. Goodman designed, tested, inspected, manufactured, sold, distributed, and/or placed into the stream of commerce, the furnace – including its component parts – in a dangerously defective condition, unreasonably dangerous to subrogors and their property.

23. Goodman knew, or should have known, that the furnace would, and did, reach subrogors without substantial change in the condition in which originally manufactured, selected, and sold.

24. The furnace was not materially altered in any way that would affect the dangerous conditions caused and created by Goodman.

25. On and at all times prior to November 28, 2021, subrogors operated the furnace in the normal, ordinary and intended manner, and for its normal, ordinary and intended purpose.

26. The aforementioned defects consisted of:

   a. design defects;
   b. manufacturing defects;
   c. component defects;
   d. use-instructions, installation-instructions, and/or warnings defects; and/or
   e. a failure to warn of the design, manufacturing, and/or component defects, and/or improperly provided warning and/or safe-use instructions.

27. The aforementioned defects or defective conditions existed at the time the furnace left Goodman's possession and/or control, and caused subrogors damages as described herein.

28. For these reasons, Goodman is strictly liable to subrogors – and ultimately to Plaintiff – pursuant to Section 402A of the Restatement (Second) of Torts, as well as the applicable statutory and common law of Pennsylvania.

29. As a result of the damages directly and proximately caused by the unreasonably dangerous defects in the furnace, subrogors sustained and incurred damages as described herein in an amount in excess of $83,000.00.

30. As described above, Plaintiff became subrogated to certain recovery rights and interests of subrogors, i.e. for claims paid per the policy, including the claims asserted in this action.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Goodman – jointly, severally, and/or in the alternative with the other Defendant in this action – in an amount in excess of $83,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

## COUNT III – BREACH OF WARRANTY v. GOODMAN

31.     Plaintiff incorporates by reference the preceding averments as though they were repeated here.

32.     At the time of designing, testing, inspecting, assembling, manufacturing, distributing, and/or otherwise placing into the stream of commerce the furnace (including its component parts), Goodman had reason to know the particular purpose for which it would be used, and knew that its skill and judgment were being relied upon to furnish a suitable product.

33.     Thus, given the foregoing, Goodman breached the implied warranty of fitness for a particular purpose as set out in the Uniform Commercial Code ("UCC") and 13 Pa.C.S.A. §2-315 in that the furnace was not fit for the particular purpose for which such products are required.

34.     In addition, Goodman breached the implied warranty of merchantability as set out in the UCC and 13 Pa.C.S.A. §2-314(c) in that the furnace was not fit for the ordinary uses for which such products are used.

35.     In addition, Goodman breached any and all express warranties made or relating to the furnace that became part of the basis of the bargain for sale of the product in violation of the UCC and 13 Pa.C.S.A. §2-313.

36.     Subrogors' damages occurred as a direct and proximate result of Goodman's breach of its implied warranties of fitness for a particular purpose and merchantability as set out

in the UCC and 13 Pa.C.S.A. §2-315 and §2-314(c) as a result of Goodman's breach of its expressed warranties in violation of the UCC and 13 Pa.C.S.A. §2-313.

37. As described herein, Plaintiff became subrogated to certain recovery rights and interests of subrogors, i.e. for claims paid per the policy, including the claims asserted in this action.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Goodman – jointly, severally, and/or in the alternative with the other Defendant in this action – in an amount in excess of $83,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

### COUNT IV – NEGLIGENCE v. BEARDSLEY

38. Plaintiff incorporates by reference the preceding averments as though they were repeated here.

39. Upon information and belief, Beardsley was hired and/or otherwise retained by subrogors to perform work on the HVAC system at the subject property.

40. Beardsley thereby owed subrogors a duty of reasonable care to repair and/or service the HVAC system at the subject property.

41. The herein-described damages were the direct and proximate result of the negligence of Beardsley, including negligent acts and/or omissions as performed by and through its agents, employees, subcontractors, and/or servants, more specifically described as follows:

   a. failing to exercise reasonable care in the performance of duties in the inspection and servicing of the furnace and its component parts at the subject property by negligently …

      i. failing to competently inspect and service the furnace and its component parts in a safe and appropriate manner;

  ii. failing to ensure that proper techniques were employed, and applicable safety procedures followed in inspecting and/or servicing the furnace; and/or

  iii. failing to properly monitor the work of all agents, servants, subcontractors, and/or employees during the inspection and servicing of the furnace and its component parts to ensure compliance with applicable procedures.

b. failing to adequately instruct, supervise and/or train servants, employees, subcontractors, and/or agents as to the proper ways to perform the tasks set forth in subparagraph (a);

c. failing to adequately warn subrogors and others of the dangers resulting from the failure to exercise reasonable care as set forth in subparagraph (a), above;

d. failing to provide, establish and/or follow proper and adequate controls so as to ensure the proper performance of the tasks set forth in subparagraph (a) above;

e. failing to perform the tasks set forth in subparagraph (a) in conformity with prevailing industry and governmental specifications and standards;

f. failing to retain competent, qualified and/or able agents, subcontractors, employees, and/or servants to perform the tasks set forth in subparagraph (a) above; and/or

g. violating the standards of care prescribed by statutes, rules, regulations, ordinances, codes, and/or industry customs applicable to its work at the subject property.

42. As a direct and proximate result of Beardsley's negligent acts and/or omissions, subrogors sustained and incurred damage to their property, as well as the imposition of additional expenses and hardships besides, in an amount in excess of $83,000.00; as described herein, Plaintiff became subrogated to recover on such damages.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Beardsley – jointly, severally, and/or in the alternative with the other Defendant in this action

– in an amount in excess of $83,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

### COUNT V – BREACH OF IMPLIED WARRANTIES v. BEARDSLEY

43. Plaintiff incorporates the allegations of the above paragraphs as though they were repeated here.

44. In furtherance of the herein-described services undertaken at the subject property, Beardsley impliedly warranted that all work performed would be done in a reasonably workmanlike manner, and/or with quality workmanship, conducive to creating a habitable property.

45. Based upon the herein-described improper conduct by Beardsley (by and through servants, employees, subcontractors, and/or agents as described above), Beardsley breached these warranties.

46. Subrogors performed all conditions precedent to recover based upon such warranty breaches

47. As a direct and proximate result of these warranty breaches, subrogors suffered the herein-described damages to their property, as well as the imposition of additional hardship and expenses (including loss of use), in an amount in excess of $83,000.00; as described herein, Plaintiff became subrogated to recover on such damages.

**WHEREFORE**, Plaintiff respectfully requests judgment in its favor and against Beardsley – jointly, severally, and/or in the alternative with the other Defendant in this action – in an amount in excess of $83,000.00, plus interest, costs of suit, reasonable attorney fees, delay damages, and such other relief as the Court deems appropriate under the circumstances.

                                        **de LUCA LEVINE LLC**

BY:    */s/ Daniel J. de Luca*
          DANIEL J. de LUCA,
          Attorneys for Plaintiff
          PA ATTY I.D. NO.: 74727
          301 E. Germantown Pike, 3rd Floor
          East Norriton, PA 19401
          Ph: 215-383-0081
          Fx: 215-383-0082
          ddeluca@delucalevine.com

**Dated:** April 19, 2023